1

2

3

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. COLEMAN, | CASE NO. 1:09-CV-00224-DLB PC |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | (ECF NO. 20) |
| CDCR, et al., | |
| Defendants. | |
| _____/ | |

### Order Following Screening Of Third Amended Complaint

I.    **Background**

A.    **Procedural History**

Plaintiff Robert E. Coleman ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.  Plaintiff initiated this action by filing his complaint on February 4, 2009.  On May 8, 2009, the Court dismissed Plaintiff's complaint with leave to amend.  On June 2, 2009, Plaintiff filed his first amended complaint.  On November 2, 2009, the Court dismissed Plaintiff's first amended complaint with leave to file a second amended complaint.  On November 17, 2009, Plaintiff filed his second amended complaint.  On May 3, 2010, Plaintiff then filed a third amended complaint, which is the operative pleading in this action.  (Third Am. Compl., ECF No. 20.)

B.    **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

1  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

2  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

3  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

4  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

5  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

6  appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

7  1915(e)(2)(B)(ii).

8         A complaint must contain "a short and plain statement of the claim showing that the

9  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

10  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

11  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing

12  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)).  Plaintiff must

13  set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

14  face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations

15  are accepted as true, legal conclusions are not.  *Id.*

16  **II.    Summary of Third Amended Complaint**

17         Plaintiff is currently incarcerated at California State Prison at Corcoran ("CSP-Cor"),

18  where the events giving rise to this action occurred.  Plaintiff names as Defendants: the CDCR,

19  the Director of CDCR, Darrell G. Adams, R. Lopez, R. Fisher, D. White, R. Broomfield, A.

20  Diaz, M. Lopez, W. S. Nickless, S. Rousseau, P. Maldonado, and K. Pacheco.  Plaintiff alleges

21  violations of California Government Code section 11340.5, the First Amendment, the Eighth

22  Amendment, Title II of the Americans with Disabilities Act, § 504 of the Rehabilitation Act of

23  1973, and the Fifth Amendment.  Plaintiff requests as relief compensatory and punitive damages,

24  declaratory relief, injunctive relief in the form of adequate mental health care, single cell status,

25  ceasing of retaliatory and discriminatory acts, and appointment of counsel.[1]

26         Plaintiff alleges the following.  Plaintiff is an inmate at CSP-Cor and is assigned to a

27

28  _____
   [1]  Plaintiff's previous motion for appointment of counsel, filed November 17, 2009, was denied on November 24, 2009.

1  program for inmates with severe mental disorders called the Correctional Clinic Case

2  Management System ("CCMS").  (Third Am. Compl. ("TAC") ¶ 4.)  Plaintiff arrived at CSP-Cor

3  in November 2007, and a correctional officer falsely accused him of indecent exposure in the

4  shower.  (TAC ¶ 6.)  Plaintiff was placed in administrative segregation ("ad seg"), and was

5  denied access to his property and legal material, even though he showed Defendants M. Lopez

6  and A. Diaz his court deadlines.  (TAC ¶ 7.)  Plaintiff filed inmate appeals with Defendant

7  Warden Adams and to the appeals coordinator.  (TAC ¶ 8.)

8        Plaintiff's property was issued to him on February 18, 2008, but then confiscated on

9  March 5, 2008 on the charge of refusing a cellmate.  (TAC ¶ 9.)  Plaintiff contends this was done

10  by correctional officer S. Vela and orchestrated by Defendants Maldonado, Diaz, and M. Lopez.

11  (TAC ¶ 9.)  Plaintiff was placed in ad seg, on six-month property restriction, and stripped down

12  to 1 pair of boxers, 1 shirt, 1 pair of socks, 1 sheet, no towel, hygiene products, legal or writing

13  material, confiscation of prescription eye glasses, and prescription tennis shoes.  (TAC ¶ 9.)

14  Plaintiff filed a "class action" prison grievance against ad seg officials regarding a memorandum

15  which detailed the ad seg unit's policy.  (TAC ¶ 10.)  After the filing of the grievance, Plaintiff

16  was moved to a cell in another section without working lights in retaliation by ad seg defendants

17  (Defendants Maldonado, M. Lopez, and Diaz).  (TAC ¶ 11.)

18        On May 2008, Plaintiff filed another grievance against Defendant Diaz because he was

19  not an impartial decision maker.  (TAC ¶ 12.)  Defendant Maldonado placed a brown paper bag

20  on the outside of Plaintiff's cell window, and later placed a yellow envelope, with the initials

21  IEX for "indecent exposure."  (TAC ¶ 14.)  Defendant Diaz created a hostile environment of

22  inmates detained for indecent exposure, by denying outdoor recreation and having their cells

23  "excessively" searched.  (TAC ¶ 15.)

24        In April 2008, Plaintiff filed an ADA complaint about the retaliation and discrimination

25  he was experiencing, and not receiving adequate mental health care treatment for his

26  exhibitionism disorder.  (TAC ¶ 17.)  CSP-Cor Institutional Classification Committee ("ICC")

27  members, Defendants R. Lopez, Fisher, White, and Broomfield, assessed Plaintiff with multiple

28  Security Housing Unit ("SHU") detentions, and did not assign him any "exhibitionism"

1   treatment.  (TAC ¶ 18.)  Plaintiff was released from ad seg in August 2008.  (TAC ¶ 18.)

2          In September 2008, Plaintiff was again falsely accused of indecent exposure while taking

3   a shower.  (TAC ¶ 19.)  CSP-Cor ICC member defendants assessed Plaintiff another nine-month

4   SHU term.  (TAC ¶ 20.)  Plaintiff was then issued an indeterminate SHU detention by the ICC

5   defendants.  (TAC ¶ 21.)

6          Plaintiff was placed in CSP-Cor SHU in March 2009.  (TAC ¶ 21.)  He was endorsed for

7   exhibitionism treatment in May 2009.  (TAC ¶ 21.)  However, Plaintiff refused to sign CDC

8   7448, "Informed Consent For Mental Health Care" and "Exhibitionism Pre-Treatment Group

9   Contract."  (TAC ¶ 21.)  Signing the forms would have allowed CDCR clinicians to discuss

10  inmate health issues with custody staff, nursing staff, and other staff, to accept that

11  confidentiality is limited, and to sign any release of information required regarding an inmate's

12  past offenses and related behavior.  (TAC ¶ 21.)

13         In July 2009, CSP-Cor ICC member defendants assigned Plaintiff an R suffix, labeling

14  him a sex offender.  (TAC ¶ 22.)  Plaintiff also filed an inmate grievance regarding an inadequate

15  law library system.  (TAC ¶ 25.)

16  **III.   Analysis**

17         **A.      First Amendment Retaliation**

18         Plaintiff contends that Defendants Maldonado, Diaz, and M. Lopez retaliated against

19  Plaintiff for his filing of numerous prison grievances against 30A3 administrative officials.

20  Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the

21  government may support a § 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985);

22  *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d

23  802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment

24  retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse

25  action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

26  (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

27  reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68

28  (9th Cir. 2005).

1          1.    Defendant Maldonado

2          Defendant Maldonado allegedly placed Plaintiff on six-month property restriction

3    because he filed a grievance to Warden Adams.  (TAC ¶¶ 8-9.)  Defendant Maldonado allegedly

4    transferred Plaintiff to another cell with no working lights for two months in retaliation for

5    Plaintiff filing a class action inmate appeal.  (TAC ¶ 10.)  Defendant Maldonado also placed a

6    brown paper bag on the outside of Plaintiff's cell window, and later placed a yellow envelope,

7    with the initials IEX for "indecent exposure."  (TAC ¶ 14.)

8          Under federal pleading standards, Plaintiff states a cognizable retaliation claim for

9    placing Plaintiff on property restriction for six months and transferring Plaintiff to a cell with no

10   working lights for two months in retaliation for Plaintiff filing inmate grievances.

11         Plaintiff's claim that Defendant Maldonado placed a "IEX" sign outside Plaintiff' cell

12   door fails to state a cognizable retaliation claim.  Being labeled "IEX" does not sufficiently state

13   an adverse action by Defendant Maldonado.  Adverse action is action that "would chill a person

14   of ordinary firmness" from engaging in protected First Amendment activity.  *Pinard v.*

15   *Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006).  Plaintiff's allegations fail to

16   establish that being labeled "IEX" chilled Plaintiff's First Amendment activities.

17         It is also unclear from Plaintiff's pleadings whether Defendant Maldonado's action in

18   placing an "IEX" sign outside his cell failed to reasonably advance a legitimate penological goal.

19   Plaintiff does not deny that he suffers from an exhibitionism disorder.  Being labeled "IEX"

20   would serve the penological interest of warning prison staff of Plaintiff's behavior, and to

21   preserve security and safety in the prison.  *See Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir.

22   1999) (en banc) ("[P]rotecting the safety of guards in general is a legitimate interest, and that

23   reducing sexual harassment in particular likewise is legitimate.").

24         2.    Defendant Diaz

25         Defendant Diaz allegedly placed Plaintiff on six-month property restriction because he

26   filed a grievance to Warden Adams.  (TAC ¶¶ 8-9.)  Defendant Diaz allegedly transferred

27   Plaintiff to another cell with no working lights for two months in retaliation for Plaintiff filing a

28   class action inmate appeal.  (TAC ¶ 10.)  Defendant Diaz allegedly fostered a hostile

environment by denying recreational outdoor activity and having inmates' cells excessively searched.  (TAC ¶ 15.)  Plaintiff also contends that Defendant Diaz was not an impartial decision maker and put Plaintiff on property restriction.  (TAC ¶ 12.)

Under federal pleading standards, Plaintiff states a cognizable retaliation claim for placing Plaintiff on property restriction for six months and transferring Plaintiff to a cell with no working lights for two months in retaliation for Plaintiff filing inmate grievances.

Plaintiff's contention that he was denied recreational outdoor activity does not state a cognizable retaliation claim.  Plaintiff fails to allege sufficient facts that indicate the action was adverse for the purposes of retaliation.  The denial of recreational outdoor activity in this instance would seem to be related to the purpose of disciplinary needs.  The right to outdoor exercise is not absolute or unyielding to other considerations.  *Norwood v. Vance*, 572 F.3d 626, 631-32 (9th Cir. 2009).  Whether the denial of outdoor exercise constitutes a constitutional violation is dependent upon the circumstances leading to the denial.  *Id.*

Defendant Diaz's adjudication of Plaintiff's rules violation report does not state a cognizable retaliation claim.  Plaintiff does not allege that Defendant Diaz issued the rules violation report, or that the rules violation report was retaliatory.  Ruling against Plaintiff is not sufficient by itself to state an adverse action for the purposes of retaliation.  Accordingly, Plaintiff fails to state a cognizable retaliation claim against Defendant Diaz for adjudication of the rules violation report.

### 3.   Defendant M. Lopez

Plaintiff alleges that Defendant M. Lopez was shown Plaintiff's court deadlines and failed to provide Plaintiff with his personal property.  (TAC ¶ 7.)  Plaintiff fails to demonstrate that this action was undertaken because of Plaintiff's protected conduct.  *Rhodes*, 408 F.3d at 567-68.  Plaintiff's pleadings indicate that he filed inmate grievances regarding this issue after Defendant M. Lopez failed to provide Plaintiff with his legal property.  Thus, Defendant's alleged actions, even if adverse, did not occur *because of* Plaintiff's protected conduct.  Plaintiff thus fails to state a cognizable retaliation claim against Defendant M. Lopez for the February 2008 denial of

1  property.[2]

2      Defendant M. Lopez allegedly placed Plaintiff on six-month property restriction because

3  he filed a grievance to Warden Adams.  (TAC ¶¶ 8-9.)  Defendant M. Lopez allegedly transferred

4  Plaintiff to another cell with no working lights for two months in retaliation for Plaintiff filing a

5  class action inmate appeal.  (TAC ¶ 10.)

6      Under federal pleading standards, Plaintiff states a cognizable retaliation claim for

7  placing Plaintiff on property restriction for six months and transferring Plaintiff to a cell with no

8  working lights for two months in retaliation for Plaintiff filing inmate grievances.

9      **B.     Eighth Amendment**

10     The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does

11  not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

12  citation omitted).   A prisoner's claim of inadequate conditions of confinement does not rise to

13  the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner

14  of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with

15  deliberate indifference in doing so.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)

16  (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate

17  indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

18  must be, in objective terms, "sufficiently serious . . . ."  *Farmer*, 511 U.S. at 834 (citing *Wilson v.*

19  *Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[]

20  an excessive risk to inmate health or safety . . . ."  *Id.* at 837.

21     "Deliberate indifference is a high legal standard."  *Toguchi*, 391 F.3d at 1060.  "Under

22  this standard, the prison official must not only 'be aware of the facts from which the inference

23  could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

24  inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have

25  been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

26  matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

27

28      [2]  Plaintiff makes the same allegation against Defendant Diaz, and fails to state a retaliation claim against him for the same reasons.

7

1   1188 (9th Cir. 2002)).

2          Plaintiff alleges that Defendants M. Lopez, Diaz, and Maldonado violated Plaintiff's

3   Eighth Amendment rights when they denied him outdoor activities because of their unlawful

4   confiscation of his prescription sun eyeglasses.  (TAC ¶ 37.)  It is unclear from Plaintiff's

5   pleadings whether Defendants denied him outdoor activities directly, or indirectly by denying

6   him his prescription eye glasses.  In either situation, Plaintiff fails to allege sufficient facts that

7   indicate Defendants M. Lopez, Diaz, and Maldonado knew of and disregarded an excessive risk

8   to Plaintiff's health or safety.  *Farmer*, 511 U.S. at 837.  Plaintiff thus fails to state a cognizable

9   Eighth Amendment claim.

10          Defendant Diaz allegedly fostered a hostile environment by denying recreational outdoor

11  activity and having inmates' cells excessively searched.  (TAC ¶ 15.)  Plaintiff alleges this action

12  was taken because some inmates were indecently exposing themselves to correctional staff.  This

13  does not state a cognizable Eighth Amendment claim.  There are no facts to support a claim that

14  Defendants knew of disregarded an excessive risk to Plaintiff's safety.  *Id.*

15          **C.      ADA and RA Claims**

16          Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation

17  Act ("RA") "both prohibit discrimination on the basis of disability."  *Lovell v. Chandler*, 303

18  F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with

19  a disability shall, by reason of such disability, be excluded from participation in or be denied the

20  benefits of the services, programs, or activities of a public entity, or be subject to discrimination

21  by such entity."  42 U.S.C. § 12132.  Section 504 of the RA provides that "no otherwise qualified

22  individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

23  the participation in, be denied the benefits of, or be subjected to discrimination under any

24  program or activity receiving Federal financial assistance . . . ."  29 U. S. C. § 794.  Title II of the

25  ADA and the RA apply to inmates within state prisons.  *Pennsylvania Dept. of Corrections v.*

26  *Yeskey*, 524 U.S. 206, 210 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir.

27  1997); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir. 1996).

28          "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

1   qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

2   discriminated against with regard to a public entity's services, programs, or activities; and (3)

3   such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052.

4   "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped

5   within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought;

6   (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program

7   providing the benefit or services receives federal financial assistance." *Id.*

8        "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a

9   plaintiff must prove intentional discrimination on the part of the defendant," and the standard for

10  intentional discrimination is deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124,

11  1138 (9th Cir. 2001).  "Deliberate indifference requires both knowledge that a harm to a federally

12  protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139

13  (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

14        Plaintiff contends that Defendant CDCR violates the ADA and RA by having a policy of

15  denying mental health care to inmates who refuse to sign a form giving up his privacy rights,

16  allowing prison officials to place inmates in the SHU regardless of mental status, punish inmates

17  for indecent exposure by placing them in control jumpsuits, covering their window with yellow

18  placard precautionary sign, group therapy restriction, and ten-day yard suspension.  (TAC ¶ 40.)

19        Plaintiff fails to state a cognizable ADA or RA claim.  Treatment or lack of treatment for

20  Plaintiff's mental health issues does not provide a basis upon which to impose liability.  *See*

21  *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (finding medical treatment

22  not basis for ADA claims); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir.

23  2005) (finding RA, like ADA, was never intended to apply to decisions involving medical

24  treatment); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding

25  medical decisions not ordinarily within scope of the ADA); *Bryant v. Madigan*, 84 F.3d 246, 249

26  (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").  Plaintiff's

27  claims that the CDCR violated the ADA and RA by denying Plaintiff mental health care does not

28  state a claim.

9

1   Plaintiff's claims regarding placement in the SHU, control jumpsuits, precautionary signs,
2   group therapy restrictions, and ten-day yard suspension also fails to state a cognizable ADA or
3   RA claim.  Plaintiff has not sufficiently alleged that these actions resulted in a denial of the
4   prison's services, programs, or activities.  Even if Plaintiff was excluded from a prison's
5   services, programs, or activities, Plaintiff has not sufficiently alleged that these actions were
6   taken because of his disability.  Labeling an action "discriminatory," without more, is a legal
7   conclusion, which is not sufficient to state a cognizable claim.  *Iqbal*, 129 S. Ct. at 1949.

8   Plaintiff alleges that Defendants M. Lopez and A. Diaz retaliated and discriminated
9   against Plaintiff by denying yard activity and excessively searching cells for other inmates.
10  (TAC ¶ 41.)  This does not state a cognizable ADA or RA claim.  Plaintiff has not sufficiently
11  alleged that these actions resulted in a denial of the prison's services, programs, or activities.
12  Even if Plaintiff was excluded from a prison's services, programs, or activities, Plaintiff has not
13  sufficiently alleged that these actions were taken because of his disability.

14  Plaintiff alleges that Defendant ICC members, R. Lopez, Fisher, White, and Broomfield,
15  egregiously affixed a R-suffix, labeling him a sex offender, and Defendant K. Pacheco labeled
16  Plaintiff a SNY (special needs yard) inmate, both of which were false.  (TAC ¶ 42.)  Plaintiff
17  alleges these actions were discriminatory, based on Plaintiff's exhibitionism behavior.  (TAC ¶
18  42.)  Neither of these actions states a cognizable ADA or RA claim.  Plaintiff fails to allege how
19  being labeled a SNY inmate or receiving a R-suffix resulted in a denial of the prison's services,
20  programs, or activities.

21      **D.      Fifth Amendment**

22  The Fifth Amendment protects an individual from self-incrimination in a future criminal
23  proceeding.  *United States v. Antelope*, 395 F.3d 1128, 1133 (9th Cir. 2005).  Plaintiff contends
24  that the department's policy of requiring inmates to sign the "informed consent for mental health
25  care" and the "exhibitionism pre-treatment group contract" would violate his Fifth Amendment
26  rights, because the CDCR clinicians may incriminate Plaintiff in future prosecution for indecent
27  exposure.  (TAC ¶ 45.)

28  Signing these forms does not appear to violate Plaintiff's Fifth Amendment rights.  The

1   form requires Plaintiff to agree to sign any releases of information required to obtain information

2   about Plaintiff's past offenses and related behaviors.  (TAC, pp. 37-38.)  It is speculative at this

3   point whether Plaintiff would be at risk of self-incrimination for a future criminal proceeding,

4   which would thus fail to state a claim.  *See Zicarelli v. New Jersey State Comm'n of*

5   *Investigation*, 406 U.S. 472, 478 (1972).  Furthermore, this claim is not ripe, because Plaintiff

6   alleges he never signed these forms.  *See City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865

7   (9th Cir. 2009) ("The ripeness question is whether the harm asserted has matured sufficiently to

8   warrant judicial intervention.") (internal citations and quotations omitted).  Accordingly,

9   Plaintiff's Fifth Amendment claim is denied.

10         **E.        Supervisory Liability**

11         Plaintiff contends that defendants CDCR and the Director of CDCR have a double cell

12   policy which is executed by its officials arbitrarily in retaliation. Plaintiff contends that allowing

13   CDCR clinicians the right to divulge Plaintiff's information to its employees violates his Eighth

14   Amendment rights.  Plaintiff contends that requiring Plaintiff to sign a compatibility form before

15   receiving an inmate is unconstitutional.  Plaintiff contends that the ICC's power to place an

16   inmate in the SHU is cruel and unusual punishment, if applied to an individual with mental

17   health issues.  (TAC ¶ 49.)

18         As stated previously, Plaintiff's allegations fail to support a claim that any of the above

19   actions violate his constitutional rights.  Insofar as Plaintiff contends respondeat superior

20   liability, Plaintiff fails to state a cognizable claim.  *Iqbal*, 129 S. Ct. at 1949.  Supervisory

21   defendants are liable only for their own conduct, not that of their subordinates.  *Id.*  As to

22   Plaintiff's claim that a double cell policy violates Plaintiff's constitutional rights, Plaintiff fails to

23   state a claim.  There is no due process right to a certain cell status.  *Bell v. Wolfish*, 441 U.S. 520,

24   542 (1979).[3]

25

26         [3]  Plaintiff appears to contend that he never refused a cell mate, but instead refused to sign any forms
     accepting a cell mate.  It appears that correctional officers do not have the authority to place an inmate in a double

27   cell without acceptance by the inmate currently in the cell.  Refusal to sign a compatibility form would constitute
     refusal to accept a housing assignment.  Plaintiff cites to no authority even suggesting that the CDCR's policy

28   requiring an inmate to sign a compatibility form is unconstitutional.  It would be sound correctional policy to not
     house inmates together who have known issues with each other, and a compatibility form would indicate whether

1    **F.      Government Code Section 11340.5**

2         Plaintiff contends a violation of California Government Code section 11340.5.  Plaintiff

3    contends that CDCR's double cell policy and consent forms for mental health care are in

4    violation of the section.  (TAC ¶¶ 29, 30.)  Section 11340.5 requires agencies to undertake

5    certain actions before it issues or enforces any regulations.  Cal. Gov't Code § 11340.5(a).

6    Section 11340.5 explicitly places requirements on state agencies, which are immune from suit in

7    federal court under the Eleventh Amendment.  *Dittman v. California*, 191 F.3d 1020, 1025 (9th

8    Cir. 1999).  Plaintiff thus fails to state a claim.

9    **G.      Linkage Requirement**

10        Under § 1983, Plaintiff is required to show that (1) each defendant acted under color of

11   state law and (2) each defendant deprived him of rights secured by the Constitution or federal

12   law.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  Plaintiff must

13   demonstrate that each defendant personally participated in the deprivation of his rights.  *Jones v.*

14   *Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Additionally, there is no respondeat superior

15   liability under section 1983, and therefore, each defendant is only liable for his own misconduct.

16   *Iqbal*, 129 S. Ct. at 1948-49.

17        Plaintiff's third amended complaint names Defendants Adams, Nickless, and Rousseau as

18   Defendants, but fails to link them to any act or omission that demonstrates a deprivation of

19   Plaintiff's constitutional rights.  Plaintiff thus fails to state a claim against them.

20   **IV.   Conclusion And Order**

21        Plaintiff states a cognizable claim against Defendants Maldonado, M. Lopez, and Diaz for

22   retaliation in violation of the First Amendment.  Plaintiff fails to state any other claims against

23   any other Defendants.

24        Accordingly, it is HEREBY ORDERED that:

25        1.       This action proceed on Plaintiff's third amended complaint, filed May 3, 2010,

26                 against Defendants Maldonado, M. Lopez, and Diaz for retaliation in violation of

27

28   such issues exist.  *See Bell*, 441 U.S. at 546 (holding constitutional rights in prison context are evaluated in light of the "central objective of prison administration, safeguarding institutional security").

the First Amendment;

2.    All other claims are dismissed for failure to state a claim upon which relief may be granted; and

3.    Defendants CDCR, the Director of CDCR, Darrell G. Adams, R. Lopez, R. Fisher, D. White, R. Broomfield, W. S. Nickless, S. Rousseau, and K. Pacheco are dismissed from this action.

IT IS SO ORDERED.

Dated:    **June 28, 2010**                    **/s/ Dennis L. Beck**
                                                         UNITED STATES MAGISTRATE JUDGE